

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0223-21

---

### ALLEN EDUARDO MONROY-PENA, Appellant

### v.

### THE STATE OF TEXAS

---

### DISSENT TO REFUSAL TO GRANT
### STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

---

**SLAUGHTER, J., filed a dissenting opinion in which KELLER, P.J., joined.**

### <u>DISSENTING OPINION</u>

While a prosecutor cannot expressly comment on a defendant's failure to testify,

that is not what occurred in this case. Here, the prosecutor pointed to Appellant's pre-trial

behavior as proof of his consciousness of guilt. Despite referring to Appellant's behavior

as his "testimony," the prosecutor's comments were made as an analogy and did not rise

to the level of an improper comment on Appellant's exercise of his Fifth Amendment right

to not testify. The court of appeals erred in holding otherwise. Because the Court now declines to correct this error, I respectfully dissent.

## I.      Background

After a jury trial, Appellant was convicted of murdering his mother in the home he shared with her and received a life sentence. At trial, the State presented the following mostly circumstantial evidence that supported the jury's verdict:

- Appellant lied to the police about his whereabouts the night of the murder.
- Appellant's cell phone records placed him near the location of the murder at the time of the murder.
- There was no forced entry, nothing was stolen, and the killer tried to clean up the blood, all of which indicated that the victim likely knew the killer.
- There was blood on Appellant's clothes found in his bedroom, and the only item in the washing machine was one of Appellant's shirts.
- The victim's blood was on the exterior and inside the trunk of the vehicle Appellant drove on the night of the murder.
- Appellant appeared unconcerned and unemotional after discovering his mother was missing. He did not participate in searching for her.
- Appellant stopped answering calls from his family members.
- After his mother's body was discovered, Appellant remained unemotional, and he did not attend her funeral.
- Within a few days of the murder, Appellant fled to Canada and was found hiding in a remote, wooded area.

In closing arguments, the prosecutor relied on the evidence of Appellant's behavior to show his consciousness of guilt:

> We've also talked about motive. I wish I knew why, what would drive someone to do this to there [*sic*] own mother. What level of rage or anger or—I don't know. I can't fathom. I can't fathom why anyone would do this

to another human being, particularly their own mother. All we know is that he did it. And it is not the State's burden to prove why because the only person who knows, the only person who knows is the person sitting right there. And you know what? He might not even know why he did it. But it doesn't matter because we know that he did do it.

…

Multiple witnesses testified, he didn't show concern about his mother. If he's innocent, if he's not guilty, that means that he woke up that morning and found his mother's bedroom door kicked open with blood all over the place. And he didn't show any concern, no worry, the way all of her other relatives did. He didn't help search. Why? Because he was on his way to Canada. The rest of her family members and Samuel, they're doing everything in their power to find her, to find out what happened to her. But one person knew exactly what happened to her is getting out of the country as fast as he possibly can. He didn't go to her funeral. He didn't show any concern. He didn't help search. He knew where she was. He knew what happened to her because he's the one that did it. This is the most damaging piece of evidence. The blood in her trunk. And you'll be able to look at these swabs. These are picture [*sic*] of two of the places. They got blood from—her blood is in several places inside that trunk. Not just on the outside of the car where he drug the body past, but inside the car. The car that he admitted that he was driving, the car that Jose said he was driving, the car that they said had only one set of keys. He left that bar in that Toyota Celica, drove home, butchered his mother, drug her body out of the house and stuffed it in the trunk of his car and drove to that abandoned spot and dumped it. And then he fled to Canada.

But the prosecutor then likened Appellant's pre-trial behavior to his "testimony," to which

defense counsel objected:

You have the instruction in your jury charge that say [*sic*] that the defendant has a right not to testify against himself and you cannot consider that fact against him. If you want his testimony, there it is. This is his testimony. He didn't wait around to see—he didn't know what the police had or didn't have. But he knew what they were going to find. Twenty-five hundred miles through eight states, he was getting away from his crime as far as he could. That's his testimony. That's the defendant's saying to you, saying to everyone loud and clear, I'm guilty. I'm guilty of killing my mother.

Defense counsel argued that the prosecutor impermissibly commented on Appellant's failure to testify. The trial court overruled the objection, finding that the argument was a "[r]easonable inference on the evidence." On direct appeal, however, the court of appeals found that the prosecutor's statements were "a direct reference to what the jury had not heard from the appellant" and "clearly a direct comment on appellant's failure to testify." *Monroy-Pena v. State*, No. 14-19-00129-CR, 2021 WL 786553, at *10 (Tex. App.—Houston [14th Dist.] March 2, 2021). Thus, it held that the trial court abused its discretion in overruling Appellant's objection. It further held that Appellant was harmed under the standard applicable to constitutional errors. *Id.* at *11-12. Accordingly, the court of appeals reversed Appellant's conviction and remanded for a new trial. *Id.* at *12.

## II.   Analysis

A criminal defendant has a constitutional right not to testify. U.S. CONST. amend. V. This constitutional right is sacrosanct such that "the failure of any defendant to . . . testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause." TEX. CODE CRIM. PROC. art. 38.08. In assessing whether a prosecutor's argument violates a defendant's Fifth Amendment right, "courts must view the State's argument from the jury's standpoint and resolve any ambiguities in the language in favor of it being a permissible argument." *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011). "If the language might reasonably be construed as merely an implied or indirect allusion, there is no violation." *Id.* As the Fifth Circuit has stated,

"We cannot find that the prosecutor manifestly intended to comment on the defendants' failure to testify, if some other explanation for his remark is equally plausible." *United States v. Rochan,* 563 F.2d 1246, 1249 (5th Cir. 1977). Thus, courts must determine "whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Randolph*, 353 S.W.3d at 891. In making such a determination, context is an important factor. *Id.*

In *Snowden v. State,* we examined a prosecutor's closing argument for a Fifth Amendment violation. 353 S.W.3d 815 (Tex. Crim. App. 2011). There, Snowden was on trial for family violence assault for punching his 38-week-pregnant girlfriend in the stomach. The challenged argument followed the summation of evidence from the 9-1-1 call during which the victim pleaded with Snowden to not hurt the baby:

> And he [the appellant] doesn't give two hoots about the mother of his baby or his baby because he looks her in the eye and punches her in her 38 week old stomach without remorse, just like he is today.

*Id.* at 817. Snowden objected to the argument as impermissibly commenting on his failure to testify. We concluded that the first part of this argument properly inferred from the evidence that Snowden's pre-trial actions demonstrated that he lacked remorse. *Id.* at 823-24. But by stating that such action demonstrated that Snowden lacked remorse at trial ("just like he is today"), we held that such argument was an improper comment on his failure to testify because the only way the jury could have determined whether Snowden was

remorseful at the time of trial would have been if he testified. *Id.*

Like the permissible comment on Snowden's pre-trial lack of remorse, the use of the word "testimony" in this case referred to Appellant's pre-trial behavior, not his time-of-trial behavior. Appellant's trial testimony would have had no ability to change his actions and the way he behaved immediately following his mother's murder. The prosecutor's use of the term "testimony" was as an analogy. *Milton v. State*, 572 S.W.3d 234, 243 (Tex. Crim. App. 2019) (stating that closing-argument analogies are proper when "the party is able to limit its argument to provide only those facts necessary to tie the analogy to either the facts of the case or reasonable deductions from those facts"). The prosecutor's argument was not intended to draw the jury's attention to Appellant's failure to testify at trial; rather, her point was that Appellant's pre-trial actions spoke louder than words and indicated his guilt. Thus, in context and viewed from the jury's standpoint, the "language might reasonably be construed as merely an implied or indirect allusion," which is not a violation. *Randolph*, 353 S.W.3d at 891. As such, the court of appeals erred in holding otherwise.

## III. Conclusion

Merely referring to Appellant's pre-trial actions and behavior which demonstrated his consciousness of guilt as his "testimony" did not improperly draw the jury's attention to Appellant's failure to testify at trial. It was merely an analogy suggesting that Appellant's pre-trial behavior was equivalent to an admission of guilt. Because the

challenged language was an implied or indirect allusion to Appellant's failure to testify, it was not a violation of his Fifth Amendment rights nor a violation of Article 38.08 of the Texas Code of Criminal Procedure. The court of appeals erred to hold that it was. Because the Court does not grant the State's petition for discretionary review to correct this error, I respectfully dissent.

Filed: October 6, 2021

Publish