In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00428-CR**
_____

**RYAN CAMILLE ROCCAFORTE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 17-27123**

**MEMORANDUM OPINION**

A jury found Ryan Camille Roccaforte guilty of committing an aggravated robbery, and he appealed.[1] Roccaforte raises two issues in his appeal. First, he argues that during voir dire, the trial court committed reversible error by allowing the prosecutor (over his objection) to give the jury a false impression about "the burden of proof and the law" that applies to claims of self-defense. Second, Roccaforte

---

[1]*See* Tex. Penal Code Ann. § 29.03(a)(2).

1

argues that during his closing argument, the trial court erred in granting the prosecutor's objection to an analogy he wanted to use to explain what it means to prove something beyond reasonable doubt.

For the following reasons, we conclude Roccaforte's issues lack merit and affirm.

Background

In 2017, a grand jury indicted Roccaforte, charging him with committing an aggravated assault. Roccaforte's indictment alleges that Roccaforte, while "committing theft of property owned by [*James Jones*] . . . and with the intent to obtain and maintain control of said property, intentionally and knowingly and recklessly cause bodily injury to [*James Jones*] by stabbing [*James Jones*] with a knife[.]"[2]

All six of the witnesses who testified in the guilt-innocence stage of Roccaforte's trial were called by the State.[3] Along with the testimony of the

---

[2]Because the Texas constitution grants crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process," we use the alias James Jones when we refer to the complaining witness in the opinion. Tex. Const. art. I, § 30.

[3]The witnesses were James Jones (the complaining witness), Bailey Davis (who was with Jones the night of the alleged robbery), Van Ray Shipp (the owner of the house where Jones stayed the night the alleged robbery occurred), John Hudson (a sergeant with the Groves Police Department involved in the investigation police conducted into the alleged robbery), Mark Blum (an officer with the Groves Police

witnesses, the jury had the right to consider the forty-nine exhibits admitted into evidence during the guilt phase of the trial.

Viewed in the light most favorable to the jury's verdict, the evidence at trial shows that Jones had been selling methamphetamine for Roccaforte for "[a] couple of months" before Roccaforte came to the residence where Jones was staying, the location where the robbery and the stabbing occurred.[4] About a week before Jones was robbed, Jones told Roccaforte he no longer wanted to sell Roccaforte's drugs. But while Jones claimed he quit working for Roccaforte, Roccaforte appeared at the residence where Jones was staying with a friend. Roccaforte gave Jones (under Jones' account of the events) around three grams of meth. Roccaforte told Jones he wanted Jones to sell the meth. Roccaforte asked Jones to sell the meth, explaining "[h]e had just a little bit left to get rid of before he went back to re-up."

After Roccaforte left Jones with the meth, he called Jones repeatedly "throughout the night" to inquire about whether the meth had been sold. Jones testified he had gone to bed, so he was not answering his phone. Early the next morning (and while it was still dark), Roccaforte returned and walked into the

---

Department involved in the investigation conducted by police), and Christopher Robbins (the detective with the Groves Police Department who detained Jones the night the alleged robbery occurred).

[4]*See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

bedroom, where Jones was in bed with his girlfriend. Roccaforte searched the room for the meth. Ultimately, he found it on the dresser. After finding the meth, Roccaforte took Jones' wallet, the keys to his truck, and his cell phone without Jones' permission. According to Jones, he had $200 in his wallet. After taking those items, Roccaforte struck Jones several times. In response, Jones stood up and took three or four steps in retreat. At that point, Roccaforte "pulled out a knife" and stabbed Jones in the arm.

After Roccaforte left, Jones retrieved a 12-guage shotgun from another room. Jones searched the house and finally found Roccaforte in the garage. Roccaforte ran from the house while hiding from Jones. As Roccaforte was running to the road, Jones shot him twice. When Roccaforte went down after being shot, Jones discovered he no longer had any more shells for his gun. When Jones returned from the house after retrieving more shells, Roccaforte had gone. Jones searched the neighborhood to find him, but police found Roccaforte first, as police had gone to the neighborhood to investigate a reported robbery. When Officer Mark Blum, a police officer employed by the City of Groves found Roccaforte, he detained him. Blum testified he detained Jones so that the police could complete their investigation and determine "exactly what was going on."

4

When the parties both rested, the court allowed the attorneys representing the parties a chance to object to the charge. The charge contains no instructions or questions on the law relevant to anyone's claim of self-defense. Roccaforte's attorney raised no objections to the charge. After the jury returned, the trial court read the court's charge. And since self-defense had been mentioned by both attorneys in voir dire, the trial court told the jury that the charge included no instructions on the defense even though the attorney for both parties had mentioned the defense in voir dire. And the trial court also mentioned when it read the charge that the issue of self-defense "is not applicable under the circumstances and evidence and law for this particular case. So, you can't speculate on what self-defense might be because it is a particular law that has its own instruction that you must have and consider and understand before you can deliberate on it."

In one of Roccaforte's appellate issues, he argues that in closing argument he "attempted to explain the concept of reasonable doubt but was prevented from doing so by the trial court." What actually occurred, however, is that the court stopped Roccaforte from using an analogy to explain what standard the attorney wanted the jury to apply to prove guilt beyond reasonable doubt. In closing, Roccaforte's attorney argued:

> I believe the Court actually gave you kind of the analogy of the football
> field, that the preponderance of the evidence is just beyond the 50-yard

5

line, a little bit of a fraction. I'm going to continue that beyond a reasonable doubt for you, and this is an individual matter. This is not group thing. Whatever you find is reasonable in your mind is what is reasonable, and that's the goal line.

Expecting that Roccaforte's attorney would continue with the analogy by stating that proving guilt beyond reasonable doubt required the State's evidence to be so strong it reached the end zone, the prosecutor objected, suggesting that in his view, the State needed to prove guilt based on a standard of 100 percent when the standard that applies—proving guilt beyond reasonable doubt—differs from proving guilt "beyond all doubt."

The trial court sustained the prosecutor's objection. And after doing so, the trial court told the jury: "There is no definition, ladies and gentlemen, for what constitutes beyond a reasonable doubt." After the ruling, Roccaforte's attorney suggested that, proving guilt under a standard of beyond reasonable doubt is a burden which is "incredibly high," and should be high since the State, when it charges a defendant with a crime, is seeking "to deprive someone of their freedom, their liberty, and that should be high." Roccaforte's attorney then explained in detail and by referring to certain evidence that he did not believe the State had proved Roccaforte guilty beyond reasonable doubt.

6

When the jury returned with its verdict, it found Roccaforte guilty. In the punishment hearing, which was also conducted before the jury, the jury found Roccaforte should serve a thirty-five-year sentence.[5]

## Voir Dire

In Roccaforte's first issue, he argues he should receive a new trial because the trial court allowed the prosecutor, over objection and during voir dire, to misstate the law that applies to a claim of self-defense. The record shows that while questioning a prospective juror during voir dire, the prosecutor asked whether the prospective juror would require anything more to establish self-defense in a case that involved a defendant charged with shooting someone if the defendant said the reason he shot another was that he was scared. Roccaforte's attorney objected to the question and suggested it was improper, arguing the question required "sort of proof on the defense at that point." The trial court overruled the objection and told the defendant's attorney: "You will have a fair opportunity to voir dire on that issue." Of course, at this point in the trial proceedings, the trial court, the prosecutor, and

---

[5]An aggravated robbery conviction is a first-degree felony. *See* Tex. Penal Code Ann. § 29.03(b). But in Roccaforte's case, the indictment alleges that before committing the primary offense, Roccaforte was convicted of an aggravated robbery in November 2007. The record shows Roccaforte pleaded *true* to the enhancement allegation, so the punishment range available on a conviction for committing his second, first-degree felony exposed him to a sentence of "life, or for any term of not more than 99 years or less than 15 years." *See id.* § 12.42(c)(1).

7

perhaps even Roccaforte's attorney did not know whether Roccaforte might testify and present an account about the assault and stabbing that was materially different from the one provided by Jones.

Roccaforte's first issue concerns an objection that arose during jury selection. Trial courts are given "broad discretion over the process of selecting a jury."[6] Under Texas law, trial courts abuse the discretion they have on matters that arise in selecting the jury when they "prohibit[] a proper question about a proper area of inquiry."[7] "A question is proper if it seeks to discover a juror's views on an issue applicable to the case."[8]

To establish error, the party that complains about the trial court's alleged error must establish that an abuse of discretion occurred.[9] Here, the record shows that the prosecutor thought Roccaforte might testify and claim, if he testified, that he stabbed Jones in self-defense. For example, in voir dire, the prosecutor explained what the law in Texas provides when defendant's claim an assault is justified because the

---

[6]*Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003); *Allridge v. State*, 762 S.W.2d 146 (Tex. Crim. App. 1988).

[7]*Sells*, 121 S.W.3d at 755.

[8]*Id*. Even so, the attorneys may not, even when asking proper questions, attempt "to commit the juror to a particular verdict based on particular facts." *Id*. at 756. There is no argument here, however, that the question although otherwise proper, was improper because it was intended to commit the prospective juror to a particular verdict under the particular facts the State expected to prove in the trial.

[9]*Fuller v. State*, 363 S.W.3d 583, 585 (Tex. Crim. App. 2012).

defendant was acting in self-defense. After the prospective told the prospective jurors about the statutory definition relevant to a claim of self-defense, the prosecutor explained that self-defense requires the force the defendant used to be reasonable, explaining: "You've actually something there to say this reasonably, ordinary and prudent person would say this is reasonable, right?" Roccaforte's attorney never objected while the prosecutor made these statements about Texas law on self-defense.

Here, the State could not have known whether Roccaforte would testify when he presented his defense. Since the State did not know that he would not testify, we see nothing improper about the prosecutor's questioning prospective jurors about their general attitudes as they related to a potential claim of self-defense.[10] Certainly, we recognize that the State has the burden of persuasion on self-defense when evidence is presented that raise the elements needed to prove self-defense.[11] Even so, the defendant (not the State) has the burden to produce evidence on self-defense, even though that evidence may come before the jury during the State's case-in-chief or when the defendant presents evidence to support his defense.[12]

---

[10]Tex. Penal Code Ann. § 9.31(a).
[11]*See Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).
[12]*Id.*

Here, the record shows the prosecutor, anticipating a possible claim of self-defense, allowed the attorneys to question the prospective jurors about their general attitudes about self-defense. Had Roccaforte produced some evidence on the elements needed to prove self-defense, whether that evidence came before the jury during the State's presentation of its case-in-chief or when the defendant presented his defense, the trial court would have been required to instruct the jury on the law as it applies to self-defense.[13] But in voir dire, the trial court would not have known whether or not self-defense might be raised by evidence not yet presented, so it was within the trial court's discretion to allow the attorneys to question the prospective jurors about their general views on self-defense. The question the prosecutor asked about self-defense concerns a hypothetical shooting, a scenario far different from the facts at issue here. So, whether the question should or should not have been allowed is a matter that falls in the zone of reasonable disagreement.[14] It follows that the trial court did not abuse its discretion by allowing the prosecutor to question jurors about what type of evidence they might want to consider in a case involving a shooting that involved a claim the defendant shot the person while acting in self-defense.[15] We overrule Roccaforte's first issue.

---

[13] *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020).
[14] *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018).
[15] *Id.*

## Closing Argument

In issue two, Roccaforte contends the trial court erred in sustaining the objection the prosecutor made to an analogy Roccaforte's attorney wanted to ask the jury to consider in measuring whether Roccaforte's guilt had been proven beyond reasonable doubt. Roccaforte suggests that because the trial court sustained the objection, he was prevented "from explaining reasonable doubt."

Complaints that concern objections lodged during a party's final argument are reviewed for abuse of discretion.[16] A trial court abuses its discretion when its ruling falls outside the zone of reasonable disagreement.[17] In deciding whether an abuse of discretion occurred, we are to consider the remark in the context "in which it appears."[18]

Roccaforte claims the trial court kept his attorney from explaining reasonable doubt by using a football-field analogy, an analogy the prosecutor expected to lead to an argument that the State needed to cross the goal line on the football field to prove guilt beyond reasonable doubt. The trial court could have inferred that is where the prosecutor expected the analogy to lead, given the context in which the objection

---

[16]*Milton v. State*, 572 S.W.3d 234, 240-41 (Tex. Crim. App. 2019).
[17]*Gonzalez*, 544 S.W.3d at 370.
[18]*See Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

11

occurred and given the prosecutor's suggestion that the attorney's argument implied the State had to prove guilt by "100 percent" or guilt "beyond all doubt."

Trial courts may control arguments by attorneys that the court perceives to be misleading as compared to the instructions in the charge.[19] When the trial court sustained the prosecutor's objection, it told the jury there is no definition under Texas law for "what constitutes beyond a reasonable doubt." Certainly, the trial court continued that proving guilt beyond reasonable doubt does not mean "the State has the burden of proving its case beyond all reasonable doubt[.]"[20] Then, it clarified that proving a matter "beyond a reasonable doubt" requires more proof than proving something by a preponderance of the evidence, and to prove guilt beyond reasonable doubt does not require proof beyond *all* possible doubt.[21]

The trial court's charge does not define *beyond reasonable doubt*.[22] The trial court told the jury there was no definition of the term under Texas law, and it told the jury that what the term meant is a matter that is left to the collective wisdom and experience of the jurors. We hold the trial court did not abuse its discretion by

---

[19]*See Loar v. State*, 627 S.W.2d 399, 401 (Tex. Crim. App. 1981).

[20]*Fuller*, 363 S.W.3d at 587; *Murphy v. State*, 112 S.W.3d 592, 597 (Tex. Crim. App. 2003).

[21]*See, e.g., Fuller*, 363 S.W.3d at 587; *Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010).

[22]*See Paulson v. State*, 28 S.W.3d 570, 573 (Tex. 2000).

sustaining the prosecutor's objection to the defendant's attorney's argument analogizing the State's burden by using a hypothetical analogy that ran the risk that some jurors might have understood the State's burden by viewing it through the lens of potentially misleading football-field analogy referring to a goal line to require the State to prove guilt beyond all doubt. Because the trial court did not abuse its discretion, Roccaforte's second issue is overruled.

Conclusion

Having overruled both of Roccaforte's issues, the trial court's judgment is AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 28, 2021
Opinion Delivered January 12, 2022
Do Not Publish

Before Kreger, Horton and Johnson, JJ.