**Opinion issued August 8, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-22-00284-CR**

————————————

**IVAN BURGOS SANTIAGO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 264th District Court**
**Bell County, Texas**
**Trial Court Case No. 82101**

---

## MEMORANDUM OPINION

A jury found appellant Ivan Burgos Santiago guilty of the offense of aggravated assault with a deadly weapon.[1] The trial court assessed his punishment

---

[1]    *See* TEX. PENAL CODE § 22.02(a)(2).

at eight years' confinement.[2] In two issues on appeal, Santiago argues that (1) the trial court abused its discretion in allowing the State to introduce police body camera footage during rebuttal because it was cumulative and harmed Santiago by its admission, and (2) the State injected "new harmful facts" during closing argument.

We affirm.

## Background

The complainant, Jerry Davis, stopped at a convenience store and observed Santiago's vehicle blocking "an old man trying to back out." Davis told Santiago to move his car. According to Davis, Santiago "[s]tarted talking crazy" and "cussing." Davis was offended by the things Santiago was saying, so Davis told Santiago he was "not the one to mess with" and walked on his way. As Davis continued to walk down the street, Santiago followed in his vehicle, pulled up next to Davis, and used a racial slur. Santiago got out of his vehicle, Davis saw that he had "a knife."[3] Davis and Santiago fought, and Davis was cut on his hands and neck. Davis was concerned with protecting himself because he was worried he would be killed.

---

[2]     Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal to this Court from the Third Court of Appeals. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases).

[3]     There were varying descriptions of this weapon. Davis called it a knife, but another witness called it a box cutter. The only weapon recovered at the scene was a box cutter that Santiago confirmed belonged to him.

Davis testified that another man was passing by and helped him subdue Santiago. Davis testified that, "while [he] was holding [Santiago's] hand keeping the knife from getting out, [Santiago] kept twisting, twisting, twisting." Davis "told him to stop, your arm is going to break and he just kept twisting and it broke." When the police arrived, they stopped fighting.

Johnny Wilson was the bystander who helped Davis subdue Santiago. He testified that he witnessed Santiago stop his vehicle in the middle of the road. Wilson saw that Santiago had a box cutter in his hand and was arguing with Davis. Wilson testified that he saw Santiago cut Davis a couple of times before Davis "was able to grab [Santiago's] hand and bring him down." When Wilson saw this, he got out of his vehicle and ran up to help Davis. Wilson told Santiago to let go of the blade, but Santiago "wouldn't let it go" and "was trying to get that blade out so he could throw some more swings and try to cut people."

Officer T. Lundt responded to 9-1-1 calls reporting a fight with a weapon. When he arrived at the scene, "[t]here was a lot of chaos going on." He saw that there were a lot of bystanders, two men sitting down and "covered in blood," a vehicle stopped in the middle of the road, and "someone holding a small knife." He detained and cuffed both Santiago and Davis to secure the scene until police could determine what had happened. Officer Lundt also "secured the weapon that was on

3

the ground," describing it as "a small box cutter like knife." Santiago was eventually charged with the aggravated assault of Davis.

Santiago testified on his own behalf. He testified that after Davis told him to move his car, he decided to drive home to get some tools. He denied calling Davis any names. He testified that Davis crossed into the street in front of his vehicle, forcing him to stop in the middle of the street. Santiago testified that, when he got out of his car, Davis had a knife in his hand that Davis used to attack him. When they fell to the ground during the fight, Davis dropped the knife and Santiago picked it up. Santiago testified that he received a cut and a broken arm during the altercation.

Santiago identified the box cutter that was collected from the scene as belonging to him. When asked how the box cutter ended up on the sidewalk at the scene of the assault, he testified, "I suppose that when we were fighting it fell from my side pocket where I keep it and somebody must have grabbed it." Santiago testified that the assault happened with a knife that Davis had in his hand. Santiago did not know what happened to that knife. When the State pointed out that no other witness mentioned seeing Davis with a knife, Santiago disagreed. He testified that Davis or Wilson "did something with it."

On rebuttal, Officer J. Leach testified that he also responded to the call about Santiago's altercation. When he arrived, he observed Santiago and Davis

4

"fighting" and "struggling" with each other. They quickly separated, and Officer Leach noticed that both men had injuries. Officer Leach believed that Santiago's arm was already broken when the fight stopped, and he also noted in his report that Santiago wanted to press charges against Davis for assaulting him with a knife.

The State sought to admit a 30-minute recording from Officer Leach's body camera depicting the scene after the police arrived. Santiago objected that the video was "improper rebuttal to the defense case," which consisted of Santiago's testimony. The State argued that Santiago made statements during his testimony about what had happened, where certain people were located, the number of weapons involved and other matters that created a conflict between his testimony and that of other witnesses. The State argued that it "would be helpful to the jury to understand what happened at that moment shortly after [the fight] occurred." The trial court overruled the objection and granted Santiago a running objection. The State played the video to the jury, accompanied by Officer Leach's testimony explaining portions of the footage. The video showed the end of the fight between Santiago and Davis, the collection of evidence, and statements made by Santiago and Davis to Officer Leach, among other things.

During closing argument, the State was summarizing the efforts police took during the investigation of the scene. The following exchange occurred:

[State]:     These officers did their job, they did a good job. It's just very obvious what happened. They talked to witnesses on

the scene that told them what happened. They found this box cutter. Right there. Right there where the guys were.

[Court]: Time to wrap up. . . .

[State]: Thank you, your Honor. This box cutter which still to this day has the victim's blood on it.

[Santiago]: Objection, Your Honor. There's no—

[Court]: Ladies and gentlemen, the lawyer comments are not evidence. You heard the evidence from the witness stand. You'll remember the evidence.

[State]: Thank you. It was all there all contained in this one location. The officers investigated. They found out what happened, and now everyone has told you. . . .

The State concluded its closing argument, and the trial court sent the jury to deliberate. Santiago made no further objections or requests regarding the State's argument.

The jury found Santiago guilty of aggravated assault, and it made an affirmative finding that he used a deadly weapon. The trial court assessed Santiago's punishment at eight years' confinement. This appeal followed.

**Admission of Body Camera Footage**

In his first issue, Santiago argues that the trial court abused its discretion in allowing the State to present the video from Officer Leach's body camera in rebuttal to Santiago's testimony.

## A.    Standard of Review

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). We will not reverse a trial court's decision to admit or exclude evidence, and there is no abuse of discretion, unless that decision lies outside the zone of reasonable disagreement. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).

For a complaint to be properly preserved for appellate review, a party must present a specific, timely objection to the trial court that articulates and makes the trial court aware of the specific grounds for the ruling that the complaining party seeks. *See* TEX. R. APP. P. 33.1(a)(1)(A); TEX. R. EVID. 103(a); *Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020). Further, the complaint raised on appeal must correspond to and comport with the objection made at trial. *See Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) (noting that issue is not preserved "if the legal basis of the complaint raised on appeal varies from the complaint made at trial").

## B.    Analysis

Santiago objected at trial to the admission of the video from Officer Leach's body camera on the ground that it was not proper rebuttal evidence. Now on appeal, he argues that the evidence "was cumulative and could have been presented

during the State's case-in-chief," citing to Rules of Evidence 401 through 403. He argues that the video was duplicative and a needless presentation of cumulative evidence. Because his objection on appeal does not comport with his objection at trial, he has not preserved this complaint for review on appeal. *See Hallmark*, 541 S.W.3d at 171; *see also, e.g.*, *Lopez v. State*, 200 S.W.3d 246, 251 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (holding that "a specific Rule 403 objection must be raised to preserve error" because Rule 403 complaint is not implicitly contained in general objection to relevancy or objection under some other rule of evidence).

To the extent that Santiago is attempting to reassert his objection at trial that the video of body camera footage was not proper rebuttal evidence and, thus, the trial court erred in overruling his objection and admitting the video, we disagree. Santiago argues that "the State could have called Leach to testify in its case-in-chief" but instead, the State "waited until after [Santiago] testified to call Leach and introduce duplicative and cumulative evidence which had already been presented, presumably so the last witness the jury would hear from was a State's witness."

In general, "[t]he prosecution is entitled on rebuttal to present any evidence that tends to refute the defensive theory of the accused and the evidence introduced in support of it." *Laws v. State*, 549 S.W.2d 738, 741 (Tex. Crim. App. 1977); *see*

TEX. CODE CRIM. PROC. art. 36.01(a) (setting order of proceeding in trial, including that "[r]ebutting testimony may be offered on the part of each party" following defendant's presentation of evidence); *id.* art. 36.02 ("The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice."); *Lackey v. State*, 638 S.W.2d 439, 457 (Tex. Crim. App. 1982) (en banc) ("This Court has often held that [Texas Code of Criminal Procedure article 36.02] and its predecessors mean that testimony may be introduced in the rebuttal portion of a trial whether it specifically rebuts other testimony or not.").

Santiago's testimony challenged factual details set out by the State's witnesses. Santiago testified that Davis instigated the fight, that Davis had a knife of his own, that Davis or Wilson "did something" with Davis's knife immediately following the fight, and that his own box cutter must have fallen from his pocket during the fight. On rebuttal, the State sought to admit the body camera footage to show the immediate aftermath of the altercation and the investigation and collection of evidence by police. We cannot say that the trial court abused its discretion in determining that this evidence was generally admissible as rebuttal evidence. *See Laws*, 549 S.W.2d at 741; *Lackey*, 638 S.W.2d at 457.

We overrule Santiago's first issue.

## Statement During Closing Argument

In his second issue, Santiago argues that the State "injected new, harmful facts during jury argument that were not supported by the record."

### A.    Standard of Review

"The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may 'arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence.'" *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019) (quoting *Campbell v. State*, 610 S.W.2d 754, 756 (Tex. Crim. App. 1980) (panel op.)). "[T]he bounds of proper closing argument are left to the sound discretion of the trial court." *Id.* at 240.

As stated above, for a complaint to be properly preserved for appellate review, a party must present a specific, timely objection to the trial court that articulates and makes the trial court aware of the specific grounds for the ruling that the complaining party seeks. *See* TEX. R. APP. P. 33.1(a)(1)(A); TEX. R. EVID. 103(a); *Burg*, 592 S.W.3d at 448–49. A defendant's failure to pursue an adverse ruling on his objection to a jury argument forfeits his right to complain about the argument on appeal. *Hernandez v. State*, 538 S.W.3d 619, 622–23 (Tex. Crim. App. 2018) (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)).

**B.     Analysis.**

During closing argument, the State commented that Davis's blood was "still to this day" on Santiago's box cutter. Santiago's counsel objected, but before he could state the specific grounds of the objection, the trial court stated, "Ladies and gentlemen, the lawyer comments are not evidence. You heard the evidence from the witness stand. You'll remember the evidence." Santiago did not make any further objections or requests regarding the State's argument that the box cutter still had Davis's blood on it.

Thus, Santiago failed to pursue his objection to an adverse ruling and, therefore, forfeits his right to complain on appeal about the argument. *See id.* at 622 (holding that defendant "must object and pursue his objection to an adverse ruling" or he "forfeits his right to complain on appeal about the argument"). Assuming without deciding that the State's comment was improper,[4] the trial court here essentially instructed the jury to disregard the lawyer's comments and consider only the evidence that was admitted at trial. "In order to claim on appeal that an instruction to disregard was inadequate to cure erroneous jury argument, the defendant must object and pursue his objection to an adverse ruling." *Id.*; *see also*

---

[4]     When Officer Lundt testified about collecting the box cutter as evidence, he testified that the blade was open, he observed that both men were bleeding and there were cuts to Davis's neck and arm, and the blade "appear[ed] to have a substance on it that look[ed] like blood." The State also introduced photographs of the box cutter as Officer Lundt described it.

*Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010) (even assuming prosecutor's argument was so egregious that instruction to disregard would be ineffectual, defendant "should have moved for a mistrial to preserve this error"). Santiago failed to pursue his objection to an adverse ruling or to move for mistrial, so he has forfeited review of this issue.

We overrule Santiago's second issue.

## Conclusion

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).