Newell, J., delivered the unanimous opinion of the Court.
Can a demonstrative video for an otherwise proper closing argument go too far? In this case, yes. During closing argument for the punishment phase of a non-violent robbery case, the State played a YouTube video of a lion at a zoo trying to eat a human baby through protective glass. A copy of the video was included in the record and is available for viewing on the Court's website here. Additionally, here are three screen captures from the video that were also included in the record:
*236 The State argued that Appellant deserved a lengthy sentence in light of his crime and criminal background. This was certainly a proper plea for law enforcement. But the demonstrative video went beyond that argument because it encouraged the jury to make its decision upon matters outside the record by inviting a comparison between Appellant and a hungry lion. Consequently, we reverse the court of appeals opinion and remand for that court to perform a harm analysis.
Background
The relevant facts here are undisputed on appeal. In 2015, Appellant entered a CVS drug store and looked around the store for about 10 to 15 minutes. At first, Appellant acted like "any other customer." He waited "until no one else was around" and then approached the counter with some "candy" and "soda." The cashier scanned the items, placed them in a bag, and handed the bag to Appellant. Then, with his hands on the counter, Appellant leaned over and told the cashier: "[T]his is a stick up, give me whatever is in the register, do not try anything, or I will kill you."[1] Appellant also told the cashier he had a weapon, though he never displayed one.
Appellant then reached his arm over the counter and grabbed another plastic bag. The cashier opened the register and handed the bills to Appellant, who stuffed them in his pockets. Next, Appellant held open the plastic bag while the cashier filled it with the coins from the register. Appellant took the bag with his food items and the bag with the coins and walked over to the beverage aisle, where he grabbed additional food and drink items. The cashier "calmly waited" until Appellant walked out of the store before calling the manager who, in turn, called the police.
During the entire incident, Appellant's hands stayed within the cashier's sight. Appellant did not display a weapon or "mess" with the waistband of his pants. Shortly after leaving the drug store, Appellant was apprehended in the area. In Appellant's backpack, officers found plastic CVS bags containing assorted rolls of coins as well as $ 17.53 worth of food and drink products. The backpack also contained some of Appellant's personal items (i.e., clothes, reading glasses, and parole papers). Appellant had "a very large wad of *237 American cash stuffed" in his pocket. He had no weapons.
Appellant was charged with robbery. At trial, the State introduced evidence that Appellant had previously robbed the same CVS the day before the charged robbery. The facts of the extraneous robbery were nearly identical to the charged robbery and involved the same cashier.[2] The jury found Appellant guilty.
During the punishment phase, the State introduced evidence of Appellant's criminal history. This included: a 2013 conviction for forgery with a sentence of 10 months in state jail; a 2007 conviction for attempted unauthorized use of a motor vehicle with a sentence of eight months in county jail; a 2002 conviction for evading arrest with a sentence of 10 months in state jail; a 1994 conviction for theft from a person enhanced to a third degree felony and resulting in a sentence of 14 years' imprisonment; and two 1993 convictions for robbery by threat, each with a sentence of seven years' imprisonment. Though he had two convictions for robbery by threat, Appellant's criminal history predominately featured crimes of theft rather than violence. There is no indication that any of his past convictions involved crimes that were particularly brutal or gruesome. Neither is there any indication that Appellant's past convictions involved crimes against children.
For its closing argument at punishment, the State sought the trial court's permission to play for the jury a YouTube video "as a demonstrative." The video is 35 seconds long and depicts a lion trying to eat a human baby through a glass wall at the zoo.[3] Appellant objected to playing the video, arguing that it was irrelevant and highly prejudicial.
The State responded that the video illustrated that "motive plus opportunity equals behavior" (i.e., Appellant's desire to commit crime would be irrelevant if Appellant were in prison because it removes his opportunity). The State described the video as "comical," stating that there are "people laughing light-heartily about the lion trying to get to a baby." Significantly, the State assured the trial court that it was "not going to compare the defendant to the lion, or society to the baby, no comparisons like that." The trial court overruled Appellant's objection without viewing the video itself.
During closing argument, the State played the video for the jury and then argued:
Ladies and gentleman, I know you're thinking, that was weird, what was that about? Anybody would think that. But that 30-second clip is exactly what this punishment phase is about.
...
Let me talk to you about that video. That lion was cute, and it was laughable, and it was funny because he's behind that piece of glass. That motive of that lion is never changing, never changing. It's innate. Given the opportunity, remove that glass, it's no[ ] longer funny, it's a tragedy. That's what's going to happen, that's a tragedy. That's what [is] going on with this case.
...
*238 In a vacuum, that resume right there, a sterile courtroom, it's almost laughable because we know [Appellant is] such a bad guy. It's almost laughable, just like that lion. You're laughing at that lion because he's behind that piece of glass. Nothing funny about that lion when he's outside that piece of glass, that's a tragedy. Nothing funny when [Appellant] is outside of prison, that's a tragedy. That's what I meant when I said that video has everything to do with this case, because [Appellant is] never changing his motive.
...
This isn't a 25-year case, this isn't a 35-year case, maybe it's a 40-year case. The Legislat[ure] said two convictions, 25, that's where you start. When you've got five and another one reduced, quit giving him chances, quit removing that glass. Keep that glass there, remove the opportunity, and send him to prison for every second that he deserves.
After finding both enhancement provisions "true," the jury assessed Appellant's punishment at 50 years' imprisonment.
On appeal, Appellant complained that the trial court abused its discretion by allowing the State to play the video.[4] The court of appeals analyzed the complaint as a challenge to the State's closing argument and affirmed Appellant's conviction and sentence. At the outset of its analysis, the court of appeals agreed that the video represented a demonstrative aid[5] in the summation of the evidence.[6] However, the court of appeals explained that the State's argument "was a plea for law enforcement and protection of the community in light of the sheer volume of appellant's prior offenses."[7] As the State summarizes the holding, "The First Court's holding was that it was acceptable in this case to argue that the appellant was a vicious lion trying to eat a baby and the jury needed to stop him."[8] The court of appeals was careful to note that this analogy was "tenuous" given the nature of the crime and only acceptable in this case because of Appellant's sustained record of re-offending upon release from confinement.[9] Appellant filed a motion for rehearing and a motion for en banc reconsideration. The court of appeals denied both, with two judges dissenting to the denial of en banc reconsideration.[10] Appellant then petitioned this Court for review.
Before this Court, Appellant's main contention is that the trial court abused its discretion in allowing the State to play a video that was highly prejudicial and inflammatory because it presented facts outside the record.[11] The State responds that the trial court did not abuse its discretion *239 in playing the demonstrative aid because the video corresponded with the trial prosecutor's proper plea for law enforcement. Notably, the State agrees with Appellant that it would not be acceptable in this case to argue that Appellant was like a lion trying to eat a baby.[12] The State argues instead that the prosecutor never made that argument and that the argument it did make was a proper plea for law enforcement.
The State is correct that the trial prosecutor initially sought to make a proper plea for law enforcement in his closing argument. In support of his request to play the video, the State argued that it only intended to use the video to illustrate that Appellant's motive was unchanging; the State did not suggest that Appellant's crime or criminal history demonstrated a motive to eat babies. However, Appellant is also correct that the State's use of the video to make the intended argument was highly prejudicial because the video nevertheless encouraged the jury to draw the very analogy the State claimed it was not trying to draw-that Appellant was like a hungry lion trying to eat a small child. Consequently, we reverse the court of appeals.
Standard of Review-Jury Arguments and Demonstrative Aids
The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may "arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence."[13] It should not "arouse the passion or prejudice of the jury by matters not properly before them."[14] As we have often explained, proper jury argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to an argument of opposing counsel, and (4) plea for law enforcement.[15]
But it appears our reliance upon these four areas of permissible argument was born out of the prohibition against introducing matters in argument that were not presented as evidence. In Alejandro v. State , we held that a State's punishment argument that injected facts outside the record was error even though it was a response to defense counsel's request that the jury assess probation.[16] The prosecutor argued that the "probation officer in this court right here should have no more than 75 probationers, and he's got 350-." Defense counsel objected to the improper argument.[17] We noted that trial counsel has a duty to confine arguments to the record, but went further by noting that "[t]o receive the stamp of approval of this court," jury arguments need to fall within the four areas of argument listed above: summations, deductions, responses, and pleas.[18] As support for these four categories, we listed cases upholding different types of arguments falling into each respective category.[19] Then we noted that "arguments that go beyond these areas too *240 often place before the jury unsworn, and most times believable, testimony of the attorney."[20]
The focus, therefore, has always been upon encouraging the jury to decide the case on the evidence in front of it rather than encouraging juries to reach a decision based upon information outside the record. This is because improper references to information outside the record are generally designed to arouse the passion and prejudice of the jury, and, as such, are inappropriate.[21] Generally, the bounds of proper closing argument are left to the sound discretion of the trial court.[22]
This prohibition against arguing outside the record is equally present when evaluating the use of demonstrative aids to assist in argument. It is certainly proper to demonstrate evidence before the jury to clarify it for the jury.[23] In this way, demonstrative aids can be "offered to illustrate or explain the testimony of witnesses."[24] However, demonstrations and demonstrative aids "do not have independent probative value for determining the substantive issues in the case"; instead, they are relevant in theory "only because of the assistance they give to the trier in understanding other real, testimonial and documentary evidence."[25] While demonstrative aids may be admitted into evidence with a proper predicate,[26] they need not always be admitted into evidence to be shown to the jury.[27] But, as with jury argument, a demonstrative aid must not be overly inflammatory.[28] Though we have not *241 explicitly said so before, we agree with courts of appeals that trial courts have discretion to permit the use of demonstrative aids and charts during argument.[29] Consequently, we review the decision to allow the use of demonstrative aids during argument, as well as the propriety of the argument itself, under an abuse of discretion standard.
The Video Encouraged The Jury to Base its Decision on Matters That Were Not Deductions From the Evidence
Here, the State asserts that use of the video was permissible as a proper plea for law enforcement. A classic example of a proper plea for law enforcement is arguing that a jury should impose a particular punishment because the defendant will continue to commit crimes.[30] And to make such an argument, the State can certainly use colorful speech.[31]
But there are limits.[32] As we have said, the State "may strike hard blows" but it must not "strike foul ones."[33] Argument must stick to matters that are in evidence or inferable from the evidence; it cannot be "abusive or inflammatory."[34] As discussed above, demonstrative aids used to enhance closing argument have the same limitations. Though we do not have many cases evaluating the propriety of a demonstrative aid during punishment argument, cases evaluating proper closing argument are instructive.
Cases involving non-record facts inserted during closing argument generally fall into two categories. First, there are cases where the State, through non-record facts, essentially testifies as a witness (e.g., arguing that "sixty percent of the crime in Dallas County [is] attributable to narcotics").[35] Such arguments are improper. Cases generally fall into this category when the non-record facts are asserted for the truth of the matter.[36] That is not what we have here.
*242 The second line of cases involves the State using non-record facts to make analogies, tell anecdotes, or appeal to common knowledge (e.g., comparing the defendant to a dormant volcano that will likely erupt again), which is sometimes proper, sometimes not. The non-record facts are not asserted for the truth of the matter (e.g., that the defendant is literally a volcano that will erupt). The cases in the second category that deal with drawing analogies focus not on whether the State used non-record facts but instead on whether the analogy was a proper deduction from the evidence.[37] The video in this case falls within this second category.
We have previously decided cases in which the State, in closing argument, analogized the defendant to an "animal" or "beast." For example, in Marx v. State , the victim and his friend went to the defendant's house at 10:00 p.m., demanding to talk to the defendant.[38] At some point the defendant fired two shots from inside his house, killing the victim.[39] During closing argument, the State repeatedly referred to the defendant as a "beast."[40] We held that the argument was improper because there was nothing "in th[e] record of a bestial aspect."[41]
Yet, we later distinguished Marx in Burns v. State . In Burns , the defendant was charged with capital murder after he and another man robbed the victim and brutally beat him to death.[42] During closing argument, the State argued: "You and each one of you pay me to do a job[,] and I hope you pay me to see that animals like this Defendant do[n't] walk the streets."[43] We held that the State's argument was a proper deduction from the evidence because the facts did reflect a "bestial aspect."[44]
Here, the State relied upon the demonstrative video to help the jury understand its argument, not to highlight any real, testimonial, or documentary evidence presented at trial or to help jurors better understand that evidence.[45] The video itself is not directly related to any evidence presented at the trial.[46] It portrays a different event than the crime itself. It does not feature anyone involved in the crime. It does not convey information about Appellant's criminal history or the past behavior *243 of the lion. The only way the video could be related to the case was through a comparison of Appellant to the lion.
According to the prosecutor, he intended to use the video to show that the lion's motive was unchanging and, by analogy, so was Appellant's. But the problem is that the most visually striking aspect of the video is not the lion's determination. It is the lion's objective, and the video invites jurors to imagine the lion achieving its objective by closing its jaws around the small child's head. Even if it can be said that the lion had a "motive," as the prosecutor suggested, the video revealed that the lion had a different, and exponentially more dangerous one than Appellant did. Displaying a video of a lion's efforts to bite through safety glass in order to eat a baby encouraged the jury to liken Appellant's intent to the lion's without a basis for such a comparison in the record. Whatever threats of violence Appellant made, none of the evidence presented in this case suggested that Appellant harbored the same type of animal blood-lust displayed by the lion in the video. Though we recognize the seriousness of the crime here, the facts of this case simply do not reflect a "bestial aspect" as they did in Burns .
We have previously held that a party can make a brief reference to non-record facts in order to make an analogy. For example, in Broussard v. State , the State, during closing argument, told the story of Pompeii and compared the defendant to a dormant volcano that would likely erupt again.[47] We upheld it as a proper argument.[48] But in that case, the State did not play a video of Mount Vesuvius erupting and covering the nearby townspeople in ash as they died.
When a party draws a verbal analogy through a discrete reference, as the prosecutor did in Broussard , the party is able to limit its argument to provide only those facts necessary to tie the analogy to either the facts of the case or reasonable deductions from those facts. But relying upon a video of a collateral event can present more facts than necessary to draw the analogy, which, in turn, carries more risk that the jury will be persuaded by collateral matters outside the record. Of course, jurors are not dumb, and we can trust them to differentiate between facts and analogy. But they are human, which is why courts prohibit overly inflammatory and unfairly prejudicial evidence or arguments, because of the risk that jurors might make a decision based upon passions and prejudices rather than the case before them.[49]
Ultimately, the video at issue here presents a significant potential for unfair prejudice, just as the video displayed during punishment in Salazar v. State did. There, the State introduced as punishment evidence a video montage of a murder victim that had been prepared for that victim's memorial service.[50] We noted in Salazar that the video montage included, among other things, numerous pictures of the victim as a small child, yet the victim had been murdered when he was much closer *244 to adulthood.[51] We held that the video carried with it enormous potential to unconsciously mislead the jury into punishing the defendant for murdering an "angelic infant."[52]
The video in this case carried with it a similar potential to "unconsciously mislead" the jury, though the potential in this case was that the jury might punish Appellant for a more heinous crime than the simple robbery he had committed. Or, as Justice Bland explained in her dissent below, "[t]he video was not merely argument by analogy, but instead placed central emphasis on a wholly collateral matter through a powerful medium, to incite the protective instincts of the jury."[53] Consequently, the trial court abused its discretion by allowing the State to play the video for the jury.
Conclusion
Playing a video of a lion trying to eat a baby to argue for a high prison sentence in a simple robbery case was an improper use of a demonstrative aid because the video invited an analogy that was not anchored to the evidence presented at trial. While the State's intended argument was a proper plea for law enforcement, the State, by playing the video, improperly invited the jury to view Appellant's crime and criminal history as more brutal than they were. Consequently, the trial court abused its discretion in allowing the State to play the video. We reverse the court of appeals and remand the case for a harm analysis.

At trial, the cashier explained that she did not tell any of the responding officers that Appellant threatened to kill her. The first time she stated that Appellant threatened to kill her was at trial.

During the extraneous robbery: Appellant claimed he had a weapon, but the cashier never saw one. Appellant wore the same shirt, jeans, and shoes, and spoke essentially the same words to the cashier as he did in the charged robbery. Appellant's hands were also in the cashier's sight for most of the encounter.

As mentioned above, the video can be viewed on the Court's website at the following link: http://www.txcourts.gov/cca/media/.

According to the court of appeals, Appellant argued that the "use of the video to compare the prospect of appellant's presence outside of prison to that of a lion that would be mauling an infant was inflammatory and suggested to the jury an improper basis for determining appellant's punishment." Milton v. State , No. 01-16-0434-CR, 2017 WL 3633570, at *13 (Tex. App.-Houston [1st Dist.] Aug. 24, 2017).

Demonstrative aids have many different names (e.g., demonstrative evidence, visual aids). Throughout this opinion, we will refer to them only as demonstrative aids.

Milton , 2017 WL 3633570, at *14.

Id.

State's Br. 26.

Milton , 2017 WL 3633570, at *14.

Milton v. State , 546 S.W.3d 330, 340 (Tex. App.-Houston [1st Dist.] 2018).

Appellant and the State both agree that the court of appeals erroneously focused on the substance of the closing argument rather than the content of the video.

State's Br. 26.

Campbell v. State , 610 S.W.2d 754, 756 (Tex. Crim. App. 1980) (panel op.) (quoting Stearn v. State , 487 S.W.2d 734, 736 (Tex. Crim. App. 1972) ).

Id.

Freeman v. State , 340 S.W.3d 717, 727 (Tex. Crim. App. 2011).

Alejandro v. State , 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

Id.

Id. at 231-32.

Id.

Id. at 232.

Borjan v. State , 787 S.W.2d 53, 57 (Tex. Crim. App. 1990).

See Davis v. State , 329 S.W.3d 798, 825 (Tex. Crim. App. 2010) ; see also Garcia v. State , 126 S.W.3d 921, 924 (Tex. Crim. App. 2004).

Lewis v. State , 486 S.W.2d 104, 106 (Tex. Crim. App. 1972).

McCormick on Evidence § 214 (7th ed. 2016).

Id.

See Simmons v. State , 622 S.W.2d 111, 113 (Tex. Crim. App. 1981) (panel op.) ("Visual, real, or demonstrative evidence, regardless of which term is applied, is admissible upon the trial of a criminal case if it tends to solve some issue in the case and is relevant to the cause that is, if it has evidentiary value, i.e., if it sheds light on the subject at hand.").

See, e.g. , Tex. R. Evid. 1006 ("The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."). See also Wheatfall v. State , 882 S.W.2d 829, 839 (Tex. Crim. App. 1994) ("While rule 1006 clearly contemplates the admission of summaries in certain instances, the rule in no way indicates that a prosecutor can summarize her case on legal paper and submit those documents to the trial as 'evidence.' The adversarial system permits such summaries by one side during closing arguments, but they are arguments and not admitted as evidence to the jury."); Prestige Ford Co. Ltd. P'ship v. Gilmore , 56 S.W.3d 73, 79 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd) ("[Appellant's] first argument, that the exhibit itself was not admitted in evidence, is of no merit because the exhibit was a demonstrative."); United States v. Buck , 324 F.3d 786, 791 (5th Cir. 2003) ("It was proper for the diagram to be shown to the jury, to assist in its understanding of testimony and documents that had been produced, but the diagram should not have been admitted as an exhibit or taken to the jury room."); Ashley S. Lipson, Art of Advocacy-Demonstrative Evidence § 1.01 (2011) ("[U]nlike other forms of evidence, demonstrative exhibits might be used in open court and displayed to the jury even though they are inadmissible as evidence.").

Simmons , 622 S.W.2d at 113. See also Salazar v. State , 90 S.W.3d 330, 338-39 (Tex. Crim. App. 2002) (holding that seventeen-minute memorial video of the victim set to the music of Enya and Celine Dion was inadmissible as victim-impact or victim-character evidence).

Jarnigan v. State , 57 S.W.3d 76, 92 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd) ; Strong v. State , 805 S.W.2d 478, 485 (Tex. App.-Tyler 1990, pet. ref'd) ; Vera v. State , 709 S.W.2d 681, 687 (Tex. App.-San Antonio 1986, pet. ref'd).

Rocha v. State , 16 S.W.3d 1, 22 (Tex. Crim. App. 2000) (holding State's argument for a death sentence because the defendant "would kill again" a proper plea for law enforcement); Norris v. State , 902 S.W.2d 428, 444-45 (Tex. Crim. App. 1995) (same).

Rocha , 16 S.W.3d at 21-22 (holding State's argument "us[ing] colorful speech to convey the idea that the defendant would kill again and that the jury had a responsibility to prevent that occurrence through its verdict" was a proper plea for law enforcement).

Cf. Wayne R. Lafave et al., Criminal Procedure 604 (4th ed. 2015) ("Closing arguments traditionally have included appeals to emotion. It is said to be the 'time honored privilege' of counsel to 'drown the stage in tears.' Such appeals, however, are not without bounds.") (quoting Dunlop v. United States , 165 U.S. 486, 498, 17 S.Ct. 375, 41 L.Ed. 799 (1897) ).

Jordan v. State , 646 S.W.2d 946, 948 (Tex. Crim. App. 1983) ; see also Berger v. United States , 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

Grant v. State , 472 S.W.2d 531, 534 (Tex. Crim. App. 1971) ("Abuse is not argument, and vituperation is not logic.") (quoting Stevison v. State , 48 Tex.Crim. 601, 89 S.W. 1072, 1073 (Tex. Crim. App. 1905) ).

White v. State , 492 S.W.2d 488, 488 (Tex. Crim. App. 1973).

See , e.g. , Freeman , 340 S.W.3d at 728 (holding State's argument that the defendant tried "to commit the worst criminal act on law enforcement ever in the United States' history" improper); Escobedo v. State , 620 S.W.2d 590, 591 (Tex. Crim. App. 1981) (holding State's argument "referring to the unrelated death of a police officer during a trial for burglary totally outside the record and manifestly improper"); Turrentine v. State , 536 S.W.2d 219, 220 (Tex. Crim. App. 1976) (holding State's argument that the defendant was probably selling or giving away marijuana in an eight-ounce possession case improper because there was no evidence the defendant was engaged in selling marijuana); Lopez v. State , 500 S.W.2d 844, 846 (Tex. Crim. App. 1973) (holding State's argument that 11 other police officers were killed in America the same week the victims in that case were killed improper because it was not based on any evidence at trial).

Broussard v. State , 910 S.W.2d 952, 959 (Tex. Crim. App. 1995) ; Burns v. State , 556 S.W.2d 270, 285 (Tex. Crim. App. 1977) ; Marx v. State , 141 Tex.Crim. 628, 150 S.W.2d 1014, 1017 (Tex. Crim. App. 1941).

Marx , 150 S.W.2d at 1014-15.

Id. at 1015.

Id.case-ids="11614733" index="52" url="https://cite.case.law/sw2d/150/1014/#p1017"> at 1016.

Id. at 1017.

Burns , 556 S.W.2d at 273.

Id. at 285.

Id.

McCormick on Evidence § 214 (7th ed. 2016) (stating that demonstrative aids are relevant in theory "only because of the assistance they give to the trier in understanding other real, testimonial and documentary evidence").

The prosecutor acknowledged as much when he stated in reference to the video, "Ladies and gentlemen, I know you're thinking, that was weird, what was that about? Anybody would think that."

Broussard , 910 S.W.2d at 959.

Id.

Casey v. State , 215 S.W.3d 870, 883 (Tex. Crim. App. 2007) ("Unfair prejudice refers not to an adverse or detrimental effect of evidence but to an undue tendency to suggest a decision on an improper basis, commonly an emotional one."); Campbell , 610 S.W.2d at 756 (stating that closing argument should not "arouse the passion or prejudice of the jury by matters not properly before them"); Lookabaugh v. State , 171 Tex.Crim. 613, 352 S.W.2d 279, 280 (Tex. Crim. App. 1961) ("The purpose of argument is to assist the jury in properly analyzing the evidence and arriving at a verdict based on the evidence alone.").

Salazar , 90 S.W.3d at 333.

Id. at 337.

Id.

Milton , 546 S.W.3d at 342 (Bland, J., dissenting to denial of en banc reconsideration).