

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00240-CR

Nabor Marquiz **RAMOS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR1644
Honorable Ron Rangel, Judge Presiding

Opinion by:  Lori Massey Brissette, Justice

Sitting:  Lori Massey Brissette, Justice
Adrian A. Spears II, Justice
Velia A. Meza, Justice

Delivered and Filed: March 5, 2025

AFFIRMED

Appellant Nabor Marquiz Ramos challenges his conviction for the 2018 murder of Xavier

Avila.[1] Specifically, he asserts the trial court erred by: (1) improperly admitting certain exhibits as

---

[1] This is our second opinion addressing Marquiz Ramos's case. During our initial consideration of his appeal, court-appointed counsel filed an *Anders* brief and a motion to withdraw. *See Anders v. California*, 386 U.S. 738, 744 (1967); *Kelly v. State*, 436 S.W.3d 313, 319–20 (Tex. Crim. App. 2014). Having conducted an independent review of the record, we concluded there was an arguable ground for appeal, namely the record did not show the trial court complied with the statutory requirement to conduct an inquiry on the record regarding his ability to pay court costs. TEX. CODE CRIM. PROC. art. 42.15(a-1). As a result, we granted counsel's motion to withdraw, abated the appeal, and remanded

evidence, (2) charging the jury so as to render the verdict not unanimous, (3) denying his motion for mistrial, and (4) assessing costs and restitution without holding an article 42.15(a-1) inquiry. He also contends the evidence was insufficient to support his conviction. We affirm.

**BACKGROUND**

On November 25, 2018, Marquiz Ramos and his brother went to the Red Dragon Sports Bar to meet their friend Angelica Castillo Salazar. Castillo Salazar was there with her friend Ruby Martinez, Ms. Martinez's brother-in-law Leonard Martinez, and Xavier Avila. When Marquiz Ramos and his brother arrived, Mr. Martinez introduced them to Avila. After getting into a verbal altercation with another individual at the bar, Marquiz Ramos and his brother were escorted out by the bouncer.

Around 2:30 am, Marquiz Ramos and his brother confronted Avila in the parking lot. A fight ensued, and then Marquiz Ramos shot Avila eight times, including fatal shots to the chest, abdomen, and back. Marquiz Ramos and his brother then fled in their vehicle, and Avila died at the scene.

Marquiz Ramos was indicted on February 14, 2019 for murder with a repeat offender enhancement allegation.[2] After a five-day trial consisting of twenty witnesses and over 150 exhibits, the jury convicted Marquiz Ramos of first-degree murder. The trial court sentenced him to sixty years with the Texas Department of Criminal Justice—Institutional Division and assessed restitution of $6,500 and court costs of $370. This appeal followed.

---

the cause to the trial court for the appointment of new appellate counsel. *See Ramos v. State*, No. 04-22-00240-CR, 2024 WL 172585, at *1 (Tex. App.—San Antonio Jan. 17, 2024, no pet.). After new briefing was filed by Marquiz Ramos's new counsel and the State, we submitted this case on September 13, 2024 before Justice Beth Watkins, Justice Liza A. Rodriguez, and Justice Lori Massey Brissette. On January 6, 2025, we notified the parties the panel had changed to the current panel of justices.

[2] Marquiz Ramos pleaded true to the repeat offender status.

**ADMISSION OF EVIDENCE**

During San Antonio Police Department (SAPD) crime scene investigator Jolie Imler's testimony, the State offered into evidence a series of crime scene photographs as exhibits 38 to 61. Marquiz Ramos specifically objected to exhibits 38, 39, 40, 44, 45, 52, 53, 55, 56, and 59, contending "[t]hese photos . . . are cumulative. The State is offering multiple angles of the same images, and so I believe they should pick and choose which photos they are using. They are in pairs. I can read the numbers if you'd like." The trial court then proceeded to "conduct a [Rule] 403 analysis on each . . . photograph" and overruled the objections to exhibits 38, 39, 44, 45, 52, 53, 55, and 59.[3]

Exhibits 38 and 59 show the victim's body from a distance, covered above the shoes by a yellow tarp, with a small part of an arm visible and one sneaker off the foot. The body is almost entirely inside a safety perimeter created by yellow bollards surrounding a large ice vendor. Multiple, numbered evidence markers are visible on the ground, including numbers 1, 2, 4–9, and 11. Exhibit 39 is similar but closer, with evidence markers 2 and 6–8 no longer visible. Exhibits 44 and 45 depict a number 3 evidence marker over a bullet shell casing; exhibit 44 also shows a vehicle's rear license plate. Exhibit 52 shows a number 10 evidence marker next to a bullet shell casing and a yellow tarp. Exhibit 53 is a closer view of exhibit 52. Exhibit 55 shows a bullet with a red tip on the ground, surrounded by blood and a black and maroon piece of clothing.

On appeal, Marquiz Ramos argues that the trial court should have excluded these exhibits because they were too graphic, more prejudicial than probative, intended to inflame the jury, and were cumulative of Investigator Imler's testimony. Because Marquiz Ramos did not object at trial on these grounds to the photographic evidence, his point of error is not preserved on those bases.

---

[3] The trial court also clarified the other photographic exhibits were admitted as unobjected to. Marquiz Ramos's counsel did not object thereafter.

See TEX. R. APP. P. 33.1; *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020). The State also contends the issue of the admission of the exhibits is not preserved for appeal because Marquiz Ramos did not object when the photographs were admitted during testimony. This is incorrect as a matter of law. Marquiz Ramos objected to these photographs as cumulative and the trial court, in a bench conference, admitted them over defense counsel's objection. Nothing further was needed for preservation. *See* Tex. R. Evid. 103(b) ("When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal."); *see, e.g.*, *Valadez v. State*, 663 S.W.3d 133, 140 (Tex. Crim. App. 2022) (same).

### A. Standard of Review and Law

We review a trial court's admission of images for an abuse of discretion. *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013); *see Brumfield v. State*, 641 S.W.3d 568, 576 (Tex. App.—Tyler 2022, pet. ref'd). "As long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede." *Brumfield*, 641 S.W.3d at 576.

Evidence is relevant and therefore admissible "if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. Rule 403 of the Texas Rules of Evidence provides "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting *cumulative evidence*." *Id.* R. 403 (emphasis added).

For non-constitutional error such as the admission of evidence, reversal is only required if the error "affect[s] an appellant's substantial rights—*i.e.*, when they have a substantial and injurious effect or influence in determining the jury's verdict." *Cook v. State*, 665 S.W.3d 595, 600

(Tex. Crim. App. 2023); *see, e.g.*, *Valadez v. State*, 663 S.W.3d 133, 147–48 (Tex. Crim. App. 2022). We make this determination by applying certain "nonexclusive factors": (1) the character of the error and its connection to the other evidence; (2) "the nature of the evidence supporting the verdict"; (3) "the existence and degree of additional evidence indicating guilt"; (4) "whether the State emphasized the complained-of error"; (5) "the trial court's instructions"; (5) "the theory of the case"; and (6) "relevant voir dire." *Cook*, 665 S.W.3d at 599.

### B. Analysis

The only objection to be considered on appeal is that exhibits 38, 39, 44, 45, 52, 53, 55, and 59 are cumulative of other evidence. But, needlessly presenting cumulative evidence is "self-explanatory" and "concern[s] the efficiency of the trial proceeding rather than the threat of an inaccurate decision." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006); *see, e.g.*, *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007) (stating same, quoting *Giglioblanco*). We therefore cannot conclude the admission of these exhibits constituted a threat to an inaccurate decision.

Moreover, even if exhibits 38, 39, 44, 45, 52, 53, and 59 were inadmissible on other grounds, in our harmless error analysis we must also consider whether "substantially-similar" evidence was admitted "without objection, either before or after the complained-of ruling." *Cook*, 665 S.W.3d at 600 (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)) (internal quotation marks omitted). Here, the admission of exhibits 38, 39, 44, 45, 52, 53, and 59 is harmless because the later-admitted video exhibit 99 shows substantially the same evidence and was admitted without objection. *See Cook*, 665 S.W.3d at 600. Furthermore, exhibits 14, 24, and 25 were admitted without objection prior to the exhibits at issue here, and exhibits 14, 24, and 25 are nearly identical to exhibits 38 and 59. *See id.*

Marquiz Ramos also objected to exhibits 39 and 40 and separately to 55 and 56 as "pair[s]" and therefore cumulative. The trial court sustained Marquiz Ramos's objection and did not admit exhibits 40 and 56. Because Ramos did not lodge an additional objection as to exhibits 39 and 55, there is nothing for our review as to those exhibits. *See, e.g.*, *Adams v. State*, 685 S.W.2d 661, 670 (Tex. Crim. App. 1985) ("Appellant received all the relief requested. Nothing is presented for review."); *Westmoreland v. State*, 174 S.W.3d 282, 290 (Tex. App.—Tyler 2005, pet. ref'd) (same); *see also* TEX. R. APP. P. 33.1.

Accordingly, we overrule this point of error.

## JURY CHARGE

Marquiz Ramos argues the jury verdict was not clearly unanimous because the State identified more than one mens rea in its murder charge, and the trial court's jury charge reflected the same language.[4] The jury charge included as follows: "Our law provides that a person commits the offense of murder if he intentionally or knowingly causes the death of an individual or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual."

There is no question a jury verdict in a criminal case must be unanimous. *See Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). "Simply put, every juror must agree that 'the defendant committed the same, single, specific criminal act.'" *Diko v. State*, 488 S.W.3d 855, 858 (Tex. App.—Fort Worth 2016, pet. ref'd) (quoting *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005)). "Jurors, however, need not be unanimous about the specific manner and means of how an offense was committed." *Id*. Nor is the jury unanimity requirement "violated . . . when the

---

[4] "[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Further, no harm analysis is required if no error is found to have occurred with regard to how the jury was charged. *See Diko v. State*, 488 S.W.3d 855, 858 (Tex. App.—Fort Worth 2016, pet. ref'd).

jury disagrees on alternate theories of the defendant's mens rea at the time of the offense." *Davis v. State*, 268 S.W.3d 683, 711 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004)).

A person commits the offense of first-degree murder if the person: (1) "intentionally or knowingly causes the death of an individual" or (2) "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual."[5] TEX. PENAL CODE § 19.02(b)(1)–(2). Section 19.01(b)(1) and (b)(2) "do not describe different offenses; rather, they set forth alternative methods of committing the same offense." *Diko*, 488 S.W.3d at 859 (quoting *Lozano v. State*, 359 S.W.3d 790, 821–22 (Tex. App.—Fort Worth 2012, pet. ref'd)).

Moreover, the argument that a jury charge is not clearly unanimous because it identifies more than one mens rea for murder has been rejected. *See Lopez v. State*, 672 S.W.3d 915, 925–26 (Tex. App.—Corpus Christi-Edinburg 2023, pet. ref'd); *Davis*, 268 S.W.3d at 711. For example, in *Lopez*, the Corpus Christi Court of Appeals rejected the appellant's contention that the jury was not unanimous because the mens rea differed between the three theories of murder charged in the indictment. *See Lopez*, 672 S.W.3d at 925. The court explained that if "the legislature has specified that any of several different mental states will satisfy the intent or mens rea element of a particular crime, unanimity is not required on the specific alternate mental state as long as the jury unanimously agrees that the State has proved the intent element beyond a reasonable doubt." *Id.* (quoting *Davis v. State*, 268 S.W.3d 683, 712 (Tex. App.—Fort Worth 2008, pet. ref'd)); *see, e.g., Gilbert v. State*, 575 S.W.3d 848, 868 (Tex. App.—Texarkana 2019, pet. ref'd) (providing 19.02(b)(1)–(3) alternative methods of committing same offense of murder, not

---

[5] Section 19.02(b) provides additional manner and means for the commission of murder. *See* TEX. PENAL CODE § 19.02(b)(3)–(4).

separate offenses). Because the indictment and jury charge indicate that the only offense involved in this case was murder by one of two methods set forth in the Penal Code, the jury's verdict that Marquiz Ramos is guilty of murder was unanimous even if the jury did not agree unanimously as to the mens rea Marquiz Ramos employed in committing the offense. *Smith v. State*, 436 S.W.3d 353, 378 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Regardless of whether the jury determined that Marquiz Ramos intentionally or knowingly caused Avila's death, or that he caused Avila's death by committing an act clearly dangerous to human life with the intent to cause serious bodily injury, "there was only one single crime of murder." *Garcia v. State*, 246 S.W.3d 121, 141 (Tex. App.—San Antonio 2007, pet. ref'd). Consequently, the jury was appropriately unanimous in rendering Marquiz Ramos's guilty verdict. *See id*. Accordingly, this issue is overruled.

### MISTRIAL

Marquiz Ramos argues the trial court abused its discretion by denying his motion for mistrial after the State made an improper jury argument during closing. Specifically, he contends the State sought to inflame and confuse the jury by suggesting Leonard Martinez was arrested and led away in handcuffs after testifying—a fact not in evidence.

### A. The Record

During trial, Mr. Martinez testified he used his identical twin brother's name when speaking with investigators because he had a warrant for his arrest. On cross-examination, he confirmed this and admitted the warrant was still active. The State objected to discussing the nature of the charges underlying the warrant. After Marquiz Ramos's counsel clarified he only wanted to establish the warrant provided Mr. Martinez a motive to testify for the State, the trial court allowed the line of questioning without delving into the specific charges.

When questioning resumed, Marquiz Ramos's counsel re-confirmed Mr. Martinez had an active warrant and then asked if he came to testify knowing he might be arrested because of his warrant. Mr. Martinez responded he did not think about it and was there for Avila. Mr. Martinez further testified he had not been promised anything in exchange for his testimony. He also testified he had not been arrested when he met with the prosecutor and an investigator at the district attorney's office. Mr. Martinez further testified he understood lying about his identification while subject to a warrant was a criminal offense. Later, Marquiz Ramos's counsel asked Mr. Martinez to confirm he "had to feel pretty confident" he would not be arrested if he had already met with the DA's office multiple times and had not been arrested already. Mr. Martinez explained "[i]f I get arrested, I get arrested."

During closing arguments, the State mentioned Mr. Martinez testified despite the risk of arrest due to his pending warrant, seeking justice for his brother, Xavier Avila. Marquiz Ramos did not object. During the defense's closing, Marquiz Ramos's counsel twice raised Mr. Martinez's warrant and pointed out it was a criminal offense to lie about one's identity with a pending warrant. Then, during the State's second closing it explained Mr. Martinez testified "knowing the risk [of testifying with a pending warrant] because we didn't promise him anything. And, in fact, he left in handcuffs." Marquiz Ramos's counsel then objected to the facts not in evidence.

The trial court instructed the jury: "The jury will remember the facts that came out in this case and the evidence that came out." Marquiz Ramos's counsel then asked whether the trial court was overruling the objection. The court responded: "I'll be honest with you, I don't even recall whether . . . the jury are the ones that are going to know which evidence they will consider to be true and correct, so it's up to them to make that determination." Marquiz Ramos's counsel then requested a mistrial, to which the trial court responded: "[o]verruled and denied." The trial court

then instructed the jury again: "it's not my role to tell you the evidence that came out in this case. Only you know the evidence to consider." A few minutes later during a bench conference, the trial court explained it now understood the objection and "I've already instructed the jury that they have seen all the evidence. If you want, I can specifically zero in on that and sustain it and tell them to completely disregard it, and then you can make your motion after that. I'm going to leave it up to you." Marquiz Ramos's counsel responded, "We will leave it as is, Judge."

### B. Standard of Review

We review a trial court's denial of a mistrial for an abuse of discretion. *See, e.g.*, *Becerra v. State*, 685 S.W.3d 120, 127 (Tex. Crim. App. 2024). Under this standard, "we do not substitute our judgment for that of the trial court." *Id.* Instead, "we decide whether the trial court's decision was arbitrary or unreasonable." *Id.* A trial judge's decision is arbitrary or unreasonable if "no reasonable view of the record" could support the decision. *Id.*

### C. Closing Argument

Closing argument facilitates the jury's proper analysis of the evidence presented at trial so that it may reach a just and reasonable conclusion. *See Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019). In general, "the bounds of proper closing argument are left to the sound discretion of the trial court." *Id.* at 240. Typically, jury argument falls within four permissible areas: "(1) a summation of the evidence; (2) a reasonable deduction drawn from that evidence; (3) an answer to opposing counsel's argument; and (4) a plea for law enforcement." *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020). Closing arguments must address "matters that are in evidence or inferable from the evidence." *Milton*, 572 S.W.3d at 241. They may not be "abusive or inflammatory." *Id.* (quoting *Grant v. State*, 472 S.W.2d 531, 534 (Tex. Crim. App. 1971)) (internal quotation marks omitted).

Both Marquiz Ramos and the State raised the potential for Mr. Martinez's arrest due to an active warrant. The State's claim that Mr. Martinez was led away in handcuffs after testifying was not in evidence. However, the suggestion he could be led away in handcuffs was a reasonable inference, as Mr. Martinez admitted he could be arrested, a point repeatedly elicited by Marquiz Ramos himself. *See Gonzalez*, 616 S.W.3d at 594; *Milton*, 572 S.W.3d at 240–41. The State's contention was also a response to Marquiz Ramos's argument Mr. Martinez only testified because he had a deal and knew he would not be arrested. *See Gonzalez*, 616 S.W.3d at 594. Given the testimony about his live warrant and that he could be arrested at any time, the State's closing was also not especially abusive or inflammatory. *See Milton*, 572 S.W.3d at 241.

### D. Denial of Mistrial

We review the denial of a mistrial for improper jury argument by examining three factors: (1) the severity of the harm caused by the misconduct; (2) curative measures; and (3) the certainty of conviction without the misconduct. *See Gonzalez*, 616 S.W.3d at 594. Turning to the second factor, the trial court does not abuse its discretion by denying a mistrial "if a curative instruction would have sufficed." *Lee v. State*, 549 S.W.3d 138, 145 (Tex. Crim. App. 2018); *Ocon v. State*, 284 S.W.3d 880, 885 (Tex. Crim. App. 2009) (providing requesting lesser remedies is not prerequisite to mistrial, but if movant does not request lesser remedy, we will not reverse if problem could have been cured by less drastic alternative). A curative instruction is "generally considered sufficient to cure improprieties" during trial. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Crayton v. State*, 463 S.W.3d 531, 535 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (providing, in general, prompt instruction to disregard will cure error associated with improper closing argument, unless it appears argument was so clearly calculated to inflame jury minds of or of such damning character as to suggest it would be impossible to remove harmful

impression from jury minds). We "presume that a jury will follow the judge's instructions." *Gamboa*, 296 S.W.3d at 580. "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). "But if an instruction could not have had such an effect, the only suitable remedy is a mistrial, and a motion for a mistrial is the only essential prerequisite to presenting the complaint on appeal." *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004); *see, e.g.*, *Hernandez v. State*, 538 S.W.3d 619, 623 (Tex. Crim. App. 2018) (same, quoting *Young*).

Even assuming the State's arguments constituted error, we cannot conclude it had a substantial and injurious effect or influence in determining the jury's verdict. *See* TEX. R. APP. P. 44.2(b); *Cook v. State*, 665 S.W.3d 595, 600 (Tex. Crim. App. 2023). Regarding the severity of the harm, the State's claim that Mr. Martinez left in handcuffs was a single, offhand remark in twelve pages of the State's closing. Both parties repeatedly mentioned his live warrant and potential arrest without objection. *See Gonzalez*, 616 S.W.3d at 594. Moreover, the trial court twice offered a prompt curative instruction as to the jury determining what facts were in evidence. *See id*. A few minutes later, the trial court offered an even stronger curative instruction, which Marquiz Ramos's counsel declined. *See Lee*, 549 S.W.3d at 145; *Gamboa*, 296 S.W.3d at 580; *Ocon*, 284 S.W.3d at 885.

### E. Conclusion

Considering everything we learned about Mr. Martinez, his live warrant, and his potential arrest, the handcuff remark was not particularly inflammatory or so damning as to be impossible to remove the harmful impression. *See Gonzalez*, 616 S.W.3d at 594. Nor is there any reason to believe the handcuff remark would undermine the certainty of Marquiz Ramos's conviction because it did not undermine any evidence of his guilt. *See id*.

Because we conclude the State's remark was a reasonable deduction inferable from the evidence and cannot conclude the State's argument had a substantial and injurious effect or influence in determining the jury's verdict, we cannot conclude the trial court abused its discretion in denying the mistrial motion.

### SUFFICIENCY OF THE EVIDENCE

Marquiz Ramos argues that the evidence was insufficient to support his conviction. In cursory fashion, he cites the indictment and the murder statute and makes the following one-sentence argument: "A scintilla of evidence was not introduced by the State that the Appellant (1) intentionally and knowingly cause the death of Xavier Avila; or (2) with intent to cause serious bodily injury to Xavier Avila committed an act clearly dangerous to human life that caused the death of Xavier Avila."[6]

### A. The Trial

The evidence presented at trial, including multiple eyewitnesses, video surveillance, and forensic evidence, established the following: Marquiz Ramos and his brother went to the Dragon Sports Bar on the evening of November 25, 2018, invited by their friend Angelica Castillo Salazar. Castillo Salazar was with her friend Ruby Martinez, Ms. Martinez's brother-in-law Leonard Martinez, and the victim, Xavier Avila. When Marquiz Ramos and his brother arrived, Mr. Martinez, who knew Marquiz Ramos but not personally, introduced them to Avila. Ms. Martinez had met Marquiz Ramos twice before. Later that evening, Marquiz Ramos got into a verbal altercation. Ms. Martinez testified Avila and Mr. Martinez were involved in the altercation, but

---

[6] Marquiz Ramos also argues the evidence is factually insufficient, but we no longer review the sufficiency of the evidence for factual sufficiency. *See generally Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (concluding no meaningful distinction between legal and factual sufficiency exists in a criminal case and "decid[ing] that the *Jackson v. Virginia*[, 443 U.S. 307 (1979)] legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient").

Avila de-escalated it. However, Mr. Martinez testified the dispute was between Marquiz Ramos and another bar regular, with Avila merely standing nearby. The altercation ended, Marquiz Ramos and his brother finished their beers, and they were escorted out by the bouncer, Darin Boykins, who thanked them for not fighting.

During the early morning hours of November 26, Avila, Ms. Martinez, and Mr. Martinez left the bar and got into Ms. Martinez's car. Ms. Martinez testified they saw flashing headlights as they were about to leave the parking lot. Mr. Martinez testified they left the parking lot and returned because someone had called Ms. Martinez asking her to return to the bar.

Avila, Mr. Martinez, and Ms. Martinez then approached Marquiz Ramos and his brother near a parking lot ice vendor. Avila swung at Marquiz Ramos, who stepped back, then Marquiz Ramos's brother lunged at Avila, and they began fighting. Marquiz Ramos's brother was smaller than Avila, but both men suffered minor abrasions.

After Marquiz Ramos stepped back, he drew a handgun and tried to fire it at Avila while Avila fought with his brother, but the gun jammed. Marquiz Ramos repeatedly attempted to render the gun operational. Mr. Martinez moved towards Marquiz Ramos, saying, "no guns." Eventually Marquiz Ramos's brother stepped away from Avila, and Marquiz Ramos managed to fire the handgun, shooting Avila eight times, including fatal shots to the chest, abdomen, and back.[7] An investigation found eight bullet shell casings and an unfired, red-tipped bullet. Avila died next to the ice vendor, and no one else was found to be armed.

Marquiz Ramos then fled the scene with his brother in a black Saab. Later, Jacob Evans, a driver on Culebra Road, saw a black vehicle cut him off and attempt to throw an object into a flood control channel, which landed on the sidewalk. He then witnessed the vehicle get pulled over by

---

[7] Ms. Martinez identified Marquiz Ramos as the shooter, but she conceded she failed to identify him in a police lineup.

SAPD. He returned to locate the object, found a handgun, and directed police to its location. The traffic stop involved Marquiz Ramos and his brother, and based on dispatch identifying them as suspects in the shooting, the patrol officer arrested them. Police later concluded Marquiz Ramos's brother was not involved in Avila's death, and he was released.

The firearm recovered by police was a Taurus DA/SA US compact .40 caliber. A search of the Saab recovered Winchester 0.40 caliber Smith & Wesson rounds including one with a red tip. Firearms examiner David Pendleton testified the shell casings recovered from the scene were fired by the same gun. Gun shot residue tests showed Avila and Marquiz Ramos may have discharged a firearm or were in close proximity to the discharge of a firearm. A gray hoodie recovered as evidence from the Saab also tested positive for gunshot residue.

While in Bexar County Jail, Marquiz Ramos made a phone call to an unidentified individual stating, among other things, "it is what it is," he "didn't do" anything, he was in jail "for no reason," and "I know I [expletive] up and everything, but you can't take it back now."

## B. Standard of Review

When reviewing a jury's verdict in the context of a sufficiency challenge, the question is whether, "after viewing the evidence in the light most favorable to the verdict, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Nisbett v. State,* 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (internal quotation marks omitted). The jury is charged with resolving conflicts within the testimony, determining the credibility of witnesses, as well as weighing the evidence. *See Nisbett,* 552 S.W.3d at 262. Our role is simply to guard against the "rare occurrence when the factfinder does not act rationally." *Id.*

Further, it is not necessary the evidence directly prove each element, as circumstantial evidence alone can be sufficient to establish guilt. *See id.* Each fact does not need to "point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction." *Id.* (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). The jury can draw reasonable inferences from the evidence "as long as each inference is supported by the evidence presented at trial." *Carter v. State*, 620 S.W.3d 147, 150 (Tex. Crim. App. 2021) (quoting *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007)) (internal quotation marks omitted). But "juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper*, 214 S.W.3d at 15.[8] Furthermore, in determining their verdict, the jury is entitled to consider the events that took place "before, during, and after the commission of the crime." *See Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012).

## C. Law & Analysis

The sufficiency of the evidence is measured against the elements of the offense as defined by a "hypothetically correct jury charge." *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011); TEX. PENAL CODE § 19.02(c). A hypothetically correct jury charge correctly "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense." *Baltimore v. State*, 689 S.W.3d 331, 341–42 (Tex. Crim. App. 2024). The law authorized by the indictment "includes the statutory elements of the offense and those elements as modified

---

[8] An inference by a factfinder "is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id.* at 16. By contrast, "[s]peculation is mere theorizing or guessing about the possible meaning of facts and evidence presented." *Id.*

by the indictment." *Lang v. State*, 664 S.W.3d 155, 168–69 (Tex. Crim. App. 2022) (quoting *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018)) (internal quotation marks omitted).

Section 19.02(b) of the Texas Penal Code provides a person commits murder if the person, among other things, "intentionally or knowingly causes" an individual's death or "intends to cause serious bodily injury and commits an act clearly dangerous to human life" causing an individual's death. TEX. PENAL CODE § 19.02(b)(1)–(2); *see, e.g.*, *Adames v. State*, 353 S.W.3d 854, 862 (Tex. Crim. App. 2011).[9] And a "jury may infer the requisite mental state from (1) the acts, words, and conduct of the defendant, (2) the extent of the injuries to the victim, (3) the method used to produce the injuries, and (4) the relative size and strength of the parties." *Rhymes v. State*, 536 S.W.3d 85, 95 (Tex. App.—Texarkana 2017, pet. ref'd) (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)).

The indictment tracks the language of 19.02(b)(1) and (2). Applying the murder statute as alleged in the indictment, a hypothetically correct jury charge would ask whether Marquiz Ramos intentionally or knowingly caused the death of Avila by shooting him with a firearm, or with the intent to cause serious bodily injury to Avila, Marquiz Ramos committed an act clearly dangerous to human life—shooting at Avila with a firearm—causing Avila's death. *See* TEX. PENAL CODE § 19.02(b)(1)–(2); *Adames*, 353 S.W.3d at 862.

Applying our standard of review and measuring the evidence against the elements of the offense as defined by a hypothetically correct jury charge shows a rational juror could have found beyond a reasonable doubt the State proved Marquiz Ramos intentionally or knowingly caused the death of Avila, or with the intent to cause serious bodily injury to Avila, Marquiz Ramos

---

[9] A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. TEX. PENAL CODE § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

committed an act clearly dangerous to human life causing Avila's death. *See* TEX. PENAL CODE § 19.02(b)(1)–(2); *Adames*, 353 S.W.3d at 862. Specifically, the jury could have found beyond a reasonable doubt that Marquiz Ramos was angry about the bar altercation, blamed Avila, confronted him, became angrier when Avila took a swing and fought with his brother, repeatedly tried to shoot him with a jamming handgun, and eventually shot him eight times, including in the back, intentionally or knowingly causing Avila's death, or at the very least, intending to cause serious bodily injury, shot him in an act clearly dangerous to human life, causing his death. The evidence is therefore sufficient for a rational trier of fact to have found Marquiz Ramos guilty of murder beyond a reasonable doubt. *See* TEX. PENAL CODE § 19.02(b)(1)–(2); *Adames*, 353 S.W.3d at 862. Accordingly, Marquiz Ramos's argument is overruled.

### COSTS AND RESTITUTION

Marquiz Ramos states the trial court improperly assessed $370.00 in court costs and $6,500.00 in restitution without the required article 42.15(a-1) hearing. He also argues that omitting any information about article 42.15(a-1) potentially voids the trial court's entire judgment, requiring a new trial. The State responds that (1) Marquiz Ramos's argument as to the restitution argument is inadequately briefed, (2) Marquiz Ramos forfeited his costs argument at trial, and (3) remanding on the issue of costs would be a waste of judicial resources.

### A. Article 42.15(a-1)

Article 42.15(a-1) requires the trial court, at the time of sentencing, to hold a hearing *on the record* regarding the defendant's ability to pay any fine and costs:

> Notwithstanding any other provision of this article, during or immediately after imposing a sentence in a case in which the defendant entered a plea in open court as provided by Article 27.13, 27.14(a), or 27.16(a), a court shall inquire *on the record* whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs.

TEX. CODE CRIM. PROC. art. 42.15(a-1) (emphasis added).[10] There is nothing in the record to show the trial court conducted such an inquiry on the record and, in fact, the State admits it did not. However, the Court of Criminal Appeals recently held that an ability-to-pay inquiry is a forfeitable right. *Cruz v. State*, 698 S.W.3d 265, 269 (Tex. Crim. App. 2024). *Cruz* reasoned that "because the [Article 42.15(a-1)] inquiry is not fundamental to the functioning of our adjudicatory system," if the trial court does not conduct an ability-to-pay inquiry on the record, the defendant must timely object to preserve a complaint for appellate review. *Id.* at 266; *see* TEX. R. APP. P. 33.1(a)(1); *Proenza v. State*, 541 S.W.3d 786, 797 (Tex. Crim. App. 2017) (noting "responsibility of asserting forfeitable rights belongs to the litigants . . . not the trial judge [and] such rights will be unavailable on appeal if not urged at trial"). Because Marquiz Ramos's right to an ability-to-pay inquiry on the record is forfeitable, and because he failed to timely object, he did not preserve his complaint for appellate review. *See Cruz*, 698 S.W.3d at 269; *Proenza*, 541 S.W.3d at 797. Accordingly, we overrule this issue.

**B. Restitution**

Finally, with regard to Marquiz Ramos's contention that restitution was improperly assessed without an article 42.15(a-1) hearing, the issue is inadequately briefed because it contains no citations to authorities. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *see, e.g.*, *Bohannan v. State*, 546 S.W.3d 166, 180 (Tex. Crim. App. 2017) ("It is incumbent upon Appellant to cite specific legal authority and to provide legal arguments based upon that authority.").

---

[10] On January 1, 2025, Article 42.15(a-1) was amended to revise subsection (2)'s statutory cross-references addressing the performance of community service as an alternative to the payment of fines and costs. *See* TEX. CODE CRIM. PROC. art. 42.15(a-1)(2).

Even if it were adequately briefed, "to preserve an issue for appellate review, the complaining party must first raise the issue in the trial court." *Garcia v. State*, 663 S.W.3d 92, 95 (Tex. Crim. App. 2022); *see* TEX. R. APP. P. 33.1(a). "Specifically, the propriety of a restitution order must be raised in the trial court." *Garcia*, 663 S.W.3d at 95. Here, the trial court orally pronounced restitution, and Marquiz Ramos did not object. Because Marquiz Ramos did not object, he forfeited his complaint. *See id.*

We therefore overrule Marquiz Ramos's issue regarding costs and restitution.

CONCLUSION

Accordingly, the trial court's judgment is affirmed.

Lori Massey Brissette, Justice

Do Not Publish